**STATE CONTRACTING & ENGINEERING CORPORATION, a Florida corporation, Plaintiff,**

v.

**CONDOTTE AMERICA, INC., a Florida corporation, f/k/a/ Recchi America, Inc, et al. Defendants.**

No. 97–7014CIV.

United States District Court, S.D. Florida.

March 30, 2005.

Glenn Neil Smith, William Grant McCormick, Mike Albert Piscitelli, Fort Lauderdale, FL, Richard Stuart Ross, Davie, FL, John H. Faro, Miami, FL, for Plaintiff.

John Harrison Rains, III, Tampa, FL, for Defendants.

## OMNIBUS ORDER APPROVING REPORT AND RECOMMENDATION AND DISCHARGING CHARGING LIEN

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Report and Recommendation on Richard S. Ross' Notice of Filing Charging Lien [DE 548], signed by Magistrate Edwin G. Torres on October 25, 2004. In

reviewing the Report and Recommendation, the Court has considered the October 25, 2004 Findings of Fact and Conclusions of Law [DE 549] of Magistrate Judge Edwin G. Torres, the October 26, 2004 Supplement to the Report and Recommendation [DE 551] of Magistrate Judge Torres, Magistrate Torres' November 9, 2004 Order Denying Ross' Motion for Reconsideration [DE 556], Ross' Objections to the Report and Recommendation [DE 557], Plaintiff's Objections to the Magistrate's Report and Recommendation [DE 552], Ross' Response to the Plaintiff's Objections to the Magistrate's Report and Recommendation [DE 560], Plaintiff's Response to Ross' Objections to the Magistrate's Report and Recommendations [DE 565], and Plaintiff's Motion for Enlargement of Time to File Amended Objections and to Respond to Ross' Notice of Filing Citations and Supplementation in Support of his Objections to the Magistrate's Report and Recommendation [DE 588]. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the entire court record herein, and is otherwise fully advised in the premises.

## I. BACKGROUND [1]

On October 25, 2004, Magistrate Judge Edwin G. Torres issued a Report and Recommendation ("R & R") on Richard S. Ross' Motion and Memorandum of Law to Adjudicate his Charging Lien [DE 548]. In that R & R, Magistrate Torres found, when sitting in equity, (1) an express or implied contract between Richard S. Ross ("Ross") and Plaintiff State Contracting & Engineering Corporation ("SCEC"); (2) an express or implied understanding that payment to Ross was contingent upon and would be paid from the recovery obtained by SCEC in the above-styled matter; (3) that SCEC has disputed the amount of Ross' fee under the contract; and (4) that Ross had timely filed a notice of lien. Additionally, Magistrate Torres found that Ross is entitled to a contingent fee payable from SCEC's recovery in the above-styled matter in the amount of $1,094,483.34.[2] Accordingly, Magistrate Torres recommends that this Court grant Ross' Motion to Adjudicate his Charging Lien [DE 493], and discharge with prejudice Ross' January 7, 2003 Charging Lien [DE 446].

## II. SCEC'S MOTION FOR ENLARGEMENT OF TIME TO FILE AMENDED OBJECTIONS

On October 25, 2004, Magistrate Torres entered his R & R [DE 548] on Richard S. Ross, Esq.'s Motion and Memorandum of Law to Adjudicate his Charging Lien [DE 493]. The next day, on October 26, 2004, Magistrate Torres entered a Supplement to the R & R [DE 550], which notified the parties that they had ten business days from the date of the R & R to file written objections. The October 26, 2004 Supplement further informed the parties that a failure to timely object would bar the parties from a *de novo* determination by this Court of an issue covered by the R & R

---

**1.** In the Findings of Fact and Conclusions of Law [DE 549] that accompany the Report and Recommendation [DE 548], Magistrate Torres provides a comprehensive review of the procedural history of this case. The Court hereby adopts and deems that review incorporated into this Order.

**2.** Magistrate Torres arrived at the $1,094,483.34 amount by finding that the total amount of SCEC's recovery in the above-styled matter to be $8,000,000.00. According to Magistrate Torres the total contingent fee percentage under the contract was 33.33%. As such, the total contingent fee recovered under the contract would be $2,666,666.67. From the total contingent fee recovery Magistrate Torres found that Ross is entitled to 50%, or $1,333,333,34. Subtracting the $238,850.00 in hourly fees previously paid to Ross, Magistrate Torres concluded that Ross should receive $1,094,483.34.

and would bar the parties from attacking the factual findings accepted or adopted by this Court. Additionally, the October 26, 2004 Supplement notified the parties that no extension of time would be given unless the motion for an extension was accompanied by a motion for reconsideration or clarification of the R & R or Findings of Fact and Conclusions of Law.

SCEC filed its Objections to the Magistrate's R & R [DE 552] on November 4, 2004. On November 5, 2004, Ross filed a Motion for Reconsideration of the R & R to Adjudicate Richard Ross' Charging Lien [DE 553]. On the same day, Ross filed a Motion for Enlargement of Time Within Which to File Objections to the R & R [DE 554] that requested a ten day extension from the date Magistrate Torres ruled on the Motion for Reconsideration in which to file objections to the R & R. On November 8, 2004, Magistrate Torres granted Ross' Motion for Extension of Time [DE 555], and on November 9, 2004 Magistrate Torres denied Ross' Motion for Reconsideration [DE 556]. In the November 9, 2004 Order Denying Ross' Motion for Reconsideration [DE 556, p. 4] Magistrate Torres informed the parties that the deadline for filing objections or amended objections to the R & R would be November 16, 2004. The November 9, 2004 Order again notified the parties that a failure to timely object would bar the parties from

a *de novo* determination by this Court of an issue covered by the R & R and would bar the parties from attacking the factual findings accepted or adopted by this Court on appeal. Ross filed his Objections to the Magistrate's R & R [DE 557] on November 17, 2004.[3]

On March 1, 2005, almost four months after the November 16, 2005 deadline for objections and amended objections, Ross filed a Notice of Filing Record Citations and Supplementation in Support of His Objections to Magistrate's R & R [DE 587]. In essence, this Notice attempts to amend Ross' November 17, 2004 Objections to Magistrate Torres' R & R [DE 557] by including specific record citations as well as the specific basis for each of Ross' objections to the Magistrates' Findings of Fact [DE 549].[4] On March 16, 2005, SCEC filed its Motion for Enlargement of Time to File Amended Objections and to Respond to Ross' March 1, 2005 Notice [DE 588]. In the Motion, SCEC requests the opportunity to file its own Amended Objections as well as to responding to Ross' amendments.

■ When a party files timely and specific objections to a Magistrate's finding of facts district courts have an obligation to conduct a *de novo* review of the record with respect to the factual issues. *LoConte v. Dugger*, 847 F.2d 745, 749–50

---

3. The Court notes that Ross' Objections to the R & R was filed at 10:19 a.m. on November 17, 2004, despite the November 16, 2004 deadline for filing Objections imposed by Magistrate Torres. Nevertheless, in the interest of justice, the Court will consider Ross' Objections to the R & R to be timely filed. Had Ross' Objections to the R & R been filed nineteen minutes earlier it would have received the benefit of nightbox filing, which would have allowed the Objection to have been backdated to November 16, 2004. S.D. Fla. Administrative Order 2003–010. Furthermore, the Court notes that SCEC has not raised the issue of timeliness in regards to

Ross' Objections to the R & R. As such, the Court considers Ross' nineteen minute delay to be a minor procedural violation, and thus will consider his Objections as timely filed.

4. Ross' November 17, 2004 Objections to the R & R raises challenges to Magistrates Torres' Findings of Fact in paragraphs 20, 27–31, 36, 38–40, 46, 53, 55–57, 59, 60, 62–64, 66, 75, 81–82, 87, 89, 90, and 93. Ross' March 1, 2005 Notice attempts to supplement the challenges to each of the before mentioned paragraphs with the exception of paragraphs 38, 55–56, 62, 82, 87, and 93.

(11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1998). Here, Magistrate Torres' November 9, 2004 Order notified the parties that the deadline for objections and amended objections to the R & R was November 16, 2004. As discussed above, both parties filed timely Objections that the Court will consider below. However, the recent, yet dilatory, attempts by both parties to amend their Objections will not be considered by the Court.

█ The parties' long-belated efforts to amend come four months after the November 16, 2004 deadline. During that four month period neither party requested leave of this Court to amend its original Objections, until exactly four months after the deadline.[5] The Court finds the delay inexcusable. While minor procedural violations will be tolerated, the delay in question here amounts to a causal disregard for Court imposed deadlines which will not be tolerated. *See generally Ritacca v. Abbott Laboratories,* 203 F.R.D. 332 (N.D.Ill. 2001) (holding that minor lapses are tolerated by courts but inexcusable and unjustified delay will not be tolerated). As such, the Court will not consider Ross' March 1, 2005 Notice of Filing Record Citations and Supplementation in Support of His Objections to Magistrate's R & R [DE 587]; and will deny SCEC's Motion for Enlargement of Time to File Amended Objections and to Respond to Ross' March 1, 2005 Notice [DE 588].

### III. ROSS' OBJECTIONS

On November 17, 2004, Ross filed his Objections to the Magistrate's R & R [DE 557] wherein he made the following objections: (1) that under the joint venture

---

**5.** On March 16, 2005, SCEC filed a Motion to Amend its Objections, but only sought such leave after Ross filed his March 1, 2005 Notice that purported to amend his original Objections. The Court notes that Ross did not

analysis employed by Magistrate Torres, the venture is entitled to receive the full contracted fee; (2) that Magistrate Torres erred in conducting an accounting of the fee split between Ross and John H. Faro, Esq. ("Faro"); (3) pursuant to Federal Rule of Civil Procedure 59, SCEC should not be allowed a second chance to provide evidence of litigation costs it incurred; and (4) Magistrate Torres erred in limiting the value of the settlement to only the present cash component. Additionally, Ross raises challenges to Magistrates Torres' Findings of Fact in paragraphs 20, 27–31, 36, 38–40, 46, 53, 55–57, 59, 60, 62–64, 66, 75, 81–82, 87, 89, 90, and 93.

### A. *Ross' Objections to Magistrate Torres' Findings of Fact*

█ The form, timing and content of objections to a Magistrate Judge's R & R are governed by 28 U.S.C. § 636(b) and Local Magistrate Rule 4(b). According to 28 U.S.C. § 636(b)(1), "[w]ithin ten days after being served with a copy [of the R & R], any party may serve and file written objections to such proposed findings and recommendations as provide by rules of court." Local Magistrate Rule 4(b) demands that written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made, the specific basis for such objections, and supporting legal authority." S.D. Fla. L.R. 4(b). As such, it is incumbent upon the parties filing objections to an R & R to specifically identify those findings objected to and the specific basis for such objections. *Marsden v. Moore,* 847 F.2d 1536, 1548 (11th Cir.), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988). If an objec-

---

request leave from the Court to amend prior to filing his March 1, 2005 Notice. Moreover, as of the date of this Order Ross has still never sought leave to amend his Objections.

tion fails to identify the specific findings or a specific basis the district court need not consider it. *Id.*

Here, Ross' objections to Magistrate Torres' Findings of Fact prove to be inadequate under the standards established by 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b).[6] Ross' objections are inadequate because they lack the specificity required under the law. For example, Ross objects to the Findings of Fact by generally declaring that the finding is "contrary to the record evidence, including the testimony of" certain individuals[7] or merely "contrary to record evidence."[8] Such objections fail to specifically identify the portions of the record or witness testimony that support the objection. Ross' failure to timely obtain the necessary transcripts should not burden SCEC or the Court with further delays, which would result if the Court were to consider Ross' four month-late supplement. Accordingly, the Court finds Ross' objections to Magistrate Torres' Findings of Fact to be legally insufficient.

### B. Ross' Objection to the Joint Venture Not Receiving the Full Contracted Fee

█ In the R & R dated October 25, 2004, Magistrate Torres found that Faro and Ross were in effect joint ventures under Florida law. Employing the law of partnerships, which applies to joint ventures, Magistrate Torres further found that Faro's discharge did not relieve SCEC from its obligations to Ross, the surviving member of the joint venture, under the fee agreement. Under this analysis Magistrate Torres held that Ross was in charge of winding up the affairs of the joint venture's purpose-i.e., the representation of SCEC through judgment or settlement-and in doing so Ross remained accountable to Faro for any loss suffered or profit gained by their joint venture. Magistrate Torres valued the total amount of SCEC's recovery to be $8,000,000.00, of which the joint venture was owed one-third in a contingent fee, or $2,666,666.67. However, instead of awarding the entire amount of the contingency fee to Ross, Magistrate Torres reduced Ross' recovery by half based on a finding that Ross and Faro had agreed to split the fee equally. After further subtracting $238,850.00 in hourly fees previously paid to Ross, Magistrate Torres concluded that Ross was entitled to received $1,094,483.34.

In his Objection to the R & R, Ross contends that Magistrate Torres erred in reducing the contingency fee award by half. According to Ross, as the surviving member of the joint venture he is entitled to the full contingency fee award of $2,666,666.67. The Court finds Ross' argument to be misplaced. The matter before Magistrate Torres was that of Ross' Motion and Memorandum of Law to Adjudicate his Charging Lien [DE 493], not the adjudication of a joint venture's charging lien. Magistrate Torres was charged with determining the amount, if any, Ross was entitled to from his former client. In preforming this task it was necessary to first

---

**6.** The Court notes that Ross' March 1, 2005 Notice, was largely an attempt to rectify the inadequacies of his objections to Magistrate Torres' Findings of Fact. As discussed at length above, the Court will not considered Ross' March 1, 2005 Notice because of its excessive delay. This matter has been pending for well over a year, and it is far past due for a resolution. Ross fails to explain why he delayed ordering the transcripts from the March 2004 hearings before Magistrate Torres. However, no matter what caused Ross' delay, Ross' actions should not equate to further delay in the resolution of this matter.

**7.** Ross' Objections to Finding of Fact ¶¶ 27–29, 46, 57, 59, 60, 63, 66, 75, 81, 89, and 90.

**8.** Ross' Objections to Finding of Fact ¶¶ 31, 38, 53, 55–56, 64, and 82.

determine how much Ross and Faro were due under the fee agreement that existed between their "joint venture" and SCEC. However, to stop at this step in the process, as Ross desires, would have prematurely ended inquiry, since the task before Magistrate Torres was to determine the sum owed to Ross-not the sum owed to Ross and Faro. To accomplish this task, it was incumbent upon Magistrate Torres to proceed further and determine how much of that contingency fee Ross was entitled to receive. Magistrate Torres concluded, from Ross' own testimony, that there was a verbal agreement between Faro and Ross that the contingency fee would be split equally. Thus, this Court finds that Magistrate Torres did not err when finding that Ross was entitled to half of the contingency fee award, rather than the full contingency fee award.

### C. Ross' Objection to Splitting the Fee Between Himself and Faro

In his Objections to the R & R, Ross also asserts that Magistrate Torres erred in conducting an accounting of the fee split between himself and Faro. According to Ross, Magistrate Torres exceeded the scope of this Court's October 31, 2003 referral by adjudicating a non-existent claim for an accounting. Additionally, Ross asserts, in the alternative, that if Magistrate Torres had the authority to account for a fee split, the Magistrate nevertheless erred in: (1) failing to include "additional profits" received by Faro in the total contingency fee award, and (2) rewriting the fee agreement to determine that the Faro and Ross had agreed to split the fee equally. The Court disagrees with Ross on each account.

First, as explained more fully in the Court's handling of the previous objection, the task asked of Magistrate Torres in this matter was to adjudicate Ross' charging lien. Nothing in the record supports a conclusion that Magistrate Torres did any-

thing more than determine what amount of money was owed to Ross by SCEC. That was the task asked of the Magistrate, and that was the task that he preformed. As such, this Court finds that Magistrate Torres did not preform an accounting in this matter.

Second, Ross' contention that Faro's settlement should have been included in the total contingency fee award is misplaced. Ross' argument again misconstrues the task that was referred to Magistrate Torres. As explained more fully in the response to the previous objection, Magistrate Torres was referred the task of adjudicating Ross' charging lien, not the adjudication of a charging lien from the "joint venture" of Ross and Faro. As such, the resolution of Faro's charging lien through a separate settlement agreement should have no effect upon the adjudication of Ross' charging lien. Accordingly, Magistrate Torres acted properly in not considering in Faro's settlement when determining Ross' charging lien.

■ Third, Magistrate Torres did not rewrite the fee agreement in determining that Faro and Ross agreed to split the fee equally. There is no doubt that the Florida Bar standard contingent fee schedule was incorporated into the fee agreement in this matter. Ross contends that the inclusion of Rule 4–1.5(f)(4)(D) should result in awarding himself, as the lawyer assuming primary responsibility, no less than 75% of the total contingency fee. Ross' desired result, however, ignores two critical factors. First, and foremost, Ross testified that he and Faro had a verbal agreement that the contingency fee would be split equally. Second, the inclusion of Rule 4–1.5(f)(4)(D) would also have incorporated Rule 4–1.5(f)'s language that limits the application of that rule to representation in an "action or claim for personal injury or for property damages or for death or loss

of services resulting from personal injuries based upon tortious conduct of another ...." Florida Bar Rules of Professional Conduct 4–1.5(f). In other words, the incorporation of Rule 4–1.5(f) would have made it clear that Rule 4–1.5(f) was not applicable to commercial cases like the one in dispute in this matter. Based upon this evidence Magistrate Torres correctly concluded that the intent of Faro and Ross was to divide the fee equally. Therefore, Magistrate Torres did not "rewrite" the agreement as Ross suggests.

### D. Ross' Objection to Allowing SCEC a Second Opportunity to Provide Evidence of Litigation Costs

■ In the R & R, Magistrate Torres found that the contingent fee should only be applied to the net recovery of SCEC. However, Magistrate Torres noted that there was no evidence establishing the amount of litigation costs incurred by SCEC, which could be used to determine the net recovery. Thus, Magistrate Torres applied the contingency fee to the gross recovery of SCEC, but invited SCEC to file a subsequent motion supplementing the record with a statement of its litigation costs prior to settlement. Ross objects to Magistrate Torres' invitation to SCEC to supplement the record on the grounds that: (1) such a motion for reconsideration is an improper vehicle to present evidence that could have been raised earlier; and (2) if SCEC supplements the record, then Ross would improperly bear all the burden of the litigation expenses.

The Court finds Ross' arguments persuasive. First, courts have consistently held that a motion for reconsideration is not to be used as a means to present evidence that should have been raised at the time the original motion was decided. See. e.g., Burger King Corp. v. Ashland Equities. Inc., 181 F.Supp.2d 1366, 1369 (S.D.Fla.2002); Z.K. Marine Inc. v. M/V Archigetis, 808 F.Supp. 1561, 1563 (S.D.Fla.1992). Here, it would appear that the pre-settlement litigation costs incurred by SCEC should have been available for submission at the time the parties submitted their evidence to Magistrate Torres for the adjudication of Ross' charging lien. Second, if SCEC is allowed to supplement the record, Ross' contention that he should only bear half the litigation costs is arguably correct. Nevertheless, SCEC has not as of the date of this Order attempted to supplement the record with evidence of its litigation costs prior to settlement. When, and if, SCEC does so, Ross' objections may have validity. However, until then, Ross' objection is premature.

### E. Ross' Objection to Limiting the Value of the Settlement to Present Cash

■ Finally, Ross objects to Magistrate Torres' determination that the "value of settlement" should be limited to the present cash component of the settlement. In particular, Ross contends that the "value of the settlement" must include the present value of SCEC's future royalties derived on its patents, as well as the present cash component. Ross hypothesizes that the true "value of the settlement," when including both present and future value, comes to no less than $15,950,303.00;[9] a

9. Ross calculates his "value of settlement" figure as follows: "Take the fee SCEC paid Faro, $1,315,900.00 and divide that number by 25% (based upon the 25/75 split in the Agreement). Doing so yields a figure of $5,263,600.00, which is the total attorney fee due under the Agreement. Since, the total attorney fee is one-third of the value of settle-

ment, as set fort in the Agreement, to compute the 'value of settlement', divide the total attorney fee $5,263,600.00 by one-third and you get $15,950,303.00." (Ross' Objection to the R & R [DE 557] at p. 18 n. 76.)

The Court notes that Ross' calculation is based upon the 75/25 fee split rejected by the Court in a previous section of this Order.

number considerably larger than the $8,000,000.00 cash settlement received in this matter. However, in the R & R Magistrate Torres restricted the "value of the settlement" to the $8,000,000.00, since that amount was the only tangible evidence of what Faro and Ross procured for SCEC in this matter. The Court agrees with Magistrate Torres.

Courts have consistently held that a charging lien should only attach to "tangible fruits" of a lawyer's services. *See, e.g., Correa v. Christensen,* 780 So.2d 220, 220–21 (Fla. 5th DCA 2001) (citing *Sinclair, Louis, Siegel, Heath, Nussbaum, & Zavertnik, P.A. v. Baucom,* 428 So.2d 1383 (Fla.1983)). Based upon this principal courts have further held that an attorney's charging lien cannot attach to property that is not before the court. *Cole v. Kehoe,* 710 So.2d 705, 706. At this time, the only tangible evidence of the property recovered by Faro and Ross for SCEC is the $8,000,000.00 settlement. Moreover, speculation as to what future benefit, if any, SCEC may receive cannot produce the tangible evidence required for adjudication of a charging lien. Accordingly, Magistrate Torres was correct to limit the "value of the settlement" to the $8,000,000.00 settlement figure.

Additionally, the evidence does not support Ross' contention that the contingent fee should include the value of future royalties. SCEC never expressly or implicitly agreed to a definition of "settlement" or "recovery" that would allow Ross to include the present value of SCEC's future royalties in the contingent fee. Rather, the evidence demonstrates that Ross did not even discuss that the contingent fee should apply to future royalties until just before the case was settled. As such,

since these future royalties were not contracted for in the agreement, Ross' charging lien may not now attach to this property. *See, e.g., Scutieri v. Estate of Revitz,* 829 F.Supp. 387, 391 (S.D.Fla.1993); *Billingham v. Thiele,* 109 So.2d 763, 764 (Fla. 1959).

## IV. STATE CONTRACTING'S OBJECTIONS

On November 4, 2004, SCEC filed its Objections to the Magistrate's R & R [DE 552] wherein it made the following objections: (1) that the Magistrate misinterpreted *Chandris v. Yanakakis,* 668 So.2d 180 (Fla.1995) and its progeny; and (2) that Magistrate Torres erred in determinating that the violations of the Florida Bar Rule 4–1.5 were immaterial and unsubstantial.

### A. *Chandris and its Progeny*

In the R & R, Magistrate Torres concluded that "to render this contract unenforceable based upon a violation of Rule 4–1.5, one must find that the SCEC contract is 'illegal,' 'prohibited by this rule,' or seeks a fee that is 'clearly excessive as defined by this rule.'" (*R & R* at p. 37.) In its Objections to the R & R, SCEC argues this interpretation of the law governing contingent fee agreement is incorrect.[10] According to SCEC, *Chandris v. Yanakakis,* 668 So.2d 180 (Fla.1995), mandates strict compliance with the rules governing contingent fees. *Chandris,* 668 So.2d at 185–86. As such, SCEC argues, that a contract that fails to fully comply with the rules must be deemed unenforceable under the *Chandris* standard. Here, Magistrate Torres found that the contingent fee agreement contained a number of

---

**10.** SCEC also asserts that Rule 4–1.5(d) is a general fee agreement rule, and thus not directly applicable to contingent fee contracts. The Court finds this argument unpersuasive.

Contingent fee agreements are a subset of all general fee agreements, and thus should be afforded the protections provided by Rule 4–1.5(d).

minor violations of the rules governing such agreements.[11] Based upon these violations SCEC argues that under the standard imposed by *Chandris* the Court must find the contingent fee agreement in this matter to be unenforceable. This Court disagrees.

*Chandris* did not involve the application of Rule 4–1.5. Rather than addressing Rule 4–1.5, *Chandris* involved the old Code of Professional Responsibility, DR 2–106. *Chandris*, 668 So.2d at 185 n. 3. However, while *Chandris* decision did not address the application of Rule 4–1.5, the Florida Supreme Court did expressly address the application of this rule in *The Florida Bar re Amendments to The Rules Regulating the Florida Bar*, 519 So.2d 971 (Fla.1987). When addressing the "Enforceability of Fee Contracts" the Florida Supreme Court found that fee contracts would ordinarily be enforceable unless illegal, obtained through improper advertising or solicitation, prohibited by the rule, or clearly excessive as define by the rule. *Id.* at 975.

■ Applying this stand, many Florida courts post-*Chandris* have found that contingent fee agreements can be enforceable even if they have technical or immaterial violations of Rule 4–1.5(d). *See. e.g., Lackey v. Bridgestone/Firestone, Inc.*, 855 So.2d 1186, 1188 (Fla. 3d DCA 2003), *rev.*

*denied*, 870 So.2d 822 (Fla.2004) (holding that the inclusion of an unenforceable term should not void the entire contract); *Franklin & Marbin. P.A. v. Mascola*, 711 So.2d 46 (Fla. 4th DCA 1998) (holding that a lawyer is entitled to his contract fee in the absence of a determination by a court that the fee contract is illegal, prohibited or excessive); *Corvette Shop & Supplies, Inc. v. Coggins*, 779 So.2d 529, 531 (Fla. 2d DCA 2000) (refusing to invalidate an entire contingency fee contract even though it contained violations of the rule).[12] Accordingly, Magistrate Torres did not err in his interpretation of applicable Florida law.

### B. Violations of Rule 4–1.5

SCEC further objects to the R & R on the grounds that the violations of Rule 4–1.5 were "material and substantial." According to SCEC a rule violation cannot be technical and immaterial when the violation results in prejudice to a client. Here, SCEC argues that it has been prejudiced by Faro and Ross' failure to comply with Rule 4–1.5 because this failure has resulted in protracted litigation over the contingent fee agreement that would not likely have occurred if the rule had been followed. Furthermore, SCEC argues that the award to Ross should be reduced by the amount of attorneys' fees and costs

---

11. Magistrate Torres found that the contingent fee agreement in this matter violated the rules because: (1) Ross failed to sign the contract in violation of Rule 4–1.5(f)(2); (2) the agreement did not expressly provide the method by which the fee would be determined and the percentages that would accrue to Faro and Ross in violation of Rules 4–1.5(f)(1) and Rule 4–1.5(g)(2)(B); (3) the agreement did not provide what litigation expenses would be deducted from the recovery, or whether such expenses would be deducted before or after the contingent fee is calculated in violations of Rules 4–1.5(f)(1) and Rule 4–1.5(g)(2)(B); and (4) the agreement did not fully detail what was intended by the term

"value of settlement" as the basis for calculating the contingent fee in violation of Rule 4–1.8.

12. The Court finds SCEC's attempt to distinguish the case law relied upon by Magistrate Torres to be unpersuasive. In the few cases where contingent fee contracts have been held to be unenforceable by Florida courts the violations involved have been substantially greater than in the present matter. Moreover, Magistrate Torres adequately addresses this matter in footnote fifteen on page thirty-eight of the R & R, which this Court adopts and deems incorporated here.

SCEC has expended in the adjudication of Ross' charging lien. The Court disagrees.

■ SCEC does not provide, and the Court does not find, legal support for the argument that a rule violation is necessarily substantial and material if it the violation causes prejudice to a client. However, even if SCEC were able to provide such legal support, the Court does not find that SCEC has suffered a degree of prejudice that would necessitate a finding that the violations in this matter are substantial and material. While it is evident from the factual findings that SCEC has suffered some prejudice in this matter as a result of its bickering lawyers, any such prejudice is easily remedied by the Court interpreting the infirm provisions in the contract against the Ross. *See, e.g., Arabia v. Siedlecki,* 789 So.2d 380, 383 (Fla. 4th DCA 2001). Here, Magistrate Torres has interpreted these infirm provisions of the contingent fee agreement against Ross; thus mitigating any prejudice suffered by SCEC.

Lastly, SCEC's requests that Ross' recovery be reduced by the amount of attorney's fees and costs SCEC incurred during the adjudication of Ross' charging lien. The Court notes that this is a new argument that was never presented to Magistrate Torres, and thus never addressed in the R & R. As such, this request falls beyond the scope of a proper objection to this R & R, and thus the Court will not address its merits. However, the Court notes that SCEC's request would be more suitably addressed in a Motion for Attorneys' Fees and Costs.[13]

## V. MOTION TO LIMIT DISBURSEMENT OF SETTLEMENT FUNDS IN COURT REGISTRY

Ross' Motion to Limit Disbursement of Settlement Funds Deposited in the Court

Registry [DE 559] requests that the Court reserve $4,577,700.00, plus accrued interest, in the Court registry pending the completion of an appeal of this Court's ruling on the parties objections to Magistrate Torres' R & R. In essence, Ross is making an initial motion in the district court pursuant to Federal Rule of Appellate Procedure 8(a)(1), which allows a district Court to stay its judgment or order pending resolution of an appeal. The Court finds that Ross has not satisfied the stringent standards required for a stay pending appeal. *Hegna v. O'Neil,* No. 02–5208, 2002 WL 1827821, *1 (D.C.Cir. Aug. 9, 2002) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977)). Accordingly, Ross' Motion is hereby denied.

Accordingly it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [DE 548], and the accompanying Findings of Facts and Conclusions of Law [DE 549], of Magistrate Judge Edwin G. Torres, dated October 25, 2004, are hereby **ADOPTED;**

2. Ross' Motion to Adjudicate his Charging Lien [DE 493] is hereby **GRANTED**. Ross is entitled to a contingent fee payable from SCEC's recovery in the lawsuit in the amount of $1,094,483.34;

3. Ross' January 7, 2002 Charging Lien [DE 446] is hereby **DISCHARGED WITH PREJUDICE;**

4. Plaintiff's Motion for Enlargement of Time to File Amended Objections and to Respond to Ross' Notice of Filing Citations and Supplementation in Support of his Objections to the Magistrate's Report and Recommendation [DE 588] is hereby **DENIED;**

---

**13.** The Court takes no position at this time as to the potential merits of such a subsequent

Motion for Attorneys' Fees and Costs by SCEC.

5. Ross' Motion to Limit Disbursement of Settlement Funds Deposited in the Court Registry [DE 559] is hereby **DE-NIED**.