**Gregory WRIGHT, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Case No. 3:12–cv–55–J–99TJC–TEM.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 10, 2013.

Jason E. Robinson, Lydia J. Barrett, Richard L. Denney, Denney & Barrett, PA, Norman, OK, Michael E. Seelie, Michael E. Seelie, PA, Neptune Beach, FL, for Plaintiffs.

Cristina Alonso, Carlton Fields, PA, Miami, FL, Edward H. Thompson, Frank D. Hosley, John C. Seipp, Jr., Seipp, Flick & Hosley, LLP, Lake Mary, FL, for Defendant.

### *IN CAMERA ORDER*

TIMOTHY J. CORRIGAN, District Judge.

This case is before the Court on counsel for plaintiffs' Petition for Division of Attorney's Fees (Doc. S–3). Pursuant to Florida Rule of Professional Conduct 4–1.5(f), plaintiffs' attorneys seek authorization to (1) divide attorney's fees between themselves in excess of the usual 25% limit, and (2) increase their total contingency fee to an amount greater than that allowed by the Rule without prior court approval.

## I. Background

Plaintiffs retained Michael Seelie, a Florida attorney, to represent them in a case alleging wrongful death, negligence, and strict liability against defendant Ford Motor Company. (Docs. 1, S–3). Seelie filed plaintiffs' complaint on January 18, 2012. (Doc. 1). He originally entered into a contingency fee contract with plaintiffs that followed the standard fee schedule set out in Florida Rule of Professional Conduct 4–1.5(f)(4)(B)(i). Some time later, Seelie contacted two Oklahoma attorneys, Richard Denney and Lydia Barrett of Denney & Barrett, P.A., about assisting in the representation. They began talking to, and assisting, Seelie in November or December of 2012, and Denney and Barrett filed motions to be admitted pro hac vice on March 21, 2013 (Docs. 37, 38). Seelie signed a new contingency fee contract with plaintiffs on May 2, 2013, re-

flecting the participation of attorneys Denney and Barrett and a substantially increased fee schedule. (Doc. S–3 Exhibit A). The Court has reviewed the Petition and held an in camera hearing on June 17, 2013, at which both counsel and the plaintiffs participated.

## II. Discussion

Florida Rule of Professional Conduct 4–1.5(f)(4) deals with contingency fees in cases involving claims for personal injury, property damage, products liability, or death or loss of services from personal injuries caused by the tortious conduct of another. In such cases there are restrictions on the way attorneys from different firms may divide those fees and the amount of fees that can be charged, both of which are at issue here.

### A. Division of Fees

Under Rule 4–1.5(f)(4)(D), when lawyers in different firms divide a contingency fee, the lawyer assuming primary responsibility for the legal services shall receive a minimum of 75% of the fee and the lawyer assuming secondary responsibility shall receive no more than 25%.[1] However, where two or more lawyers or firms accept "substantially equal active participation," the attorneys may petition the court for authorization to divide the fee in excess of the 25% limitation. Fla. R. Prof'l Cond. 4–1.5(f)(4)(D)(iii). The application to authorize such a contract may be filed either before suit, with the complaint, or within ten days of executing the contract when new counsel is engaged. *Id.* The application should consist of a "sworn petition signed by all counsel that shall disclose in detail those services to be performed." *Id.*

The Comment to the Rule is helpful in its application. It states that where the attorneys petition for the fee division after litigation has already commenced, approval should be sought within a "reasonable period of time after the need for court approval of the fee division arises." Fla. R. Prof'l Cond. 4–1.5 cmt. The Comment also indicates that the determinative factor in the court's consideration is whether the lawyers have essentially established a co-counsel relationship. *Id.* To determine whether such a relationship exists, the court should see whether the lawyers have established a "special partnership agreement" that provides for a sharing of services or responsibility upon which the fee division is based. *Id.* The Comment contemplates that a co-counsel situation exists where the legal work and representation is divided along "established lines ... such as liability and damages." *Id.* If the court determines that a co-counsel relationship exists, the court does not also have to review or approve the specific amount of the fee division. *Id.*

The present Petition was filed within two months after Denney and Barrett were admitted pro hac vice, which is not an unreasonable period, particularly because it does not prejudice the clients in any way. However, the Petition does not comply with all of the exact requirements of the Rule. Neither Denney nor Barret signed the Petition (which they are required to do), and it does not disclose "in detail" the services to be performed, although it does reference them generally. However, these defects are not fatal to the Petition as it relates to the division of fees. In the analogous context of determining whether a fee contract is still enforceable by an attorney against his client if it does not strictly comply with Rule 4–1.5, Florida appellate courts interpreting the Flori-

---

**1.** Rule 4–1.5(g) also governs the division of fees between lawyers in different firms. However, it does so "subject to the provisions of subdivision (f)(4)(D)," which controls here.

da Supreme Court's decision in *Chandris v. Yanakakis,* 668 So.2d 180 (Fla.1995), have held that fee contracts are not void because of immaterial or technical violations of the Rule. *See State Contracting & Engineering Corp. v. Condotte America, Inc.,* 368 F.Supp.2d 1296, 1304–05 (S.D.Fla.2005) (citing three Florida District Court of Appeals cases that have upheld fee contracts violating the Rule in some way). That reasoning is applicable to the Petition here, particularly because the Court is satisfied that a co-counsel relationship exists.

At the ex parte hearing on June 17, 2013, counsel went into greater detail on the nature of the fee division, stating that they would divide the fee 60/40 (60% to Denney & Barrett together, 40% to Seelie). Counsel also stated that they would divide the work essentially between liability and damages, with Seelie handling the damages as well as the fact witnesses. The attorneys have established that a co-counsel relationship exists between Denney and Barrett on the one hand, and Seelie on the other, and deficiencies in the Petition are immaterial to the merits. Counsel may therefore divide the fees they receive as proposed.

## B. Increased Fee Schedule

■ In addition to seeking the fee division, plaintiffs' attorneys also seek to increase the percentage of their contingency fees in accordance with the amended agreement with the client. Rule 4–1.5(f)(4)(B)(i) establishes a maximum contingency fee schedule for products liability cases such as this. The Rule differentiates based on the stage of litigation, and within each stage the fee decreases as the total recovery increases. Relevant here is Rule 4–1.5(f)(4)(B)(i)(b), which limits the fees after an answer has been filed to the following: 40% of any recovery up to $1 million; plus 30% of the portion of any recovery between $1 million and $2 million; plus 20% of the portion of any recovery exceeding $2 million. However, Rule 4–1.5(f)(4)(B)(ii) provides an exception to these limits:

> "If any client is unable to obtain an attorney of the client's choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court ... for approval of any fee contract between the client and an attorney of the client's choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint."

Without prior court approval under the above exception, any fee that exceeds the amount in the standard schedule is presumed to be excessive. Fla. R. Prof'l Cond. 4–1.5(f)(4)(B)(i). The presumption of excessiveness may be rebutted. *Id.*

The Comment to the Rule states that this waiver provision will not be utilized except where the client wishes to retain a particular lawyer, or the case deals with "complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule...." Fla. Rule Prof'l Cond. 4–1.5(f) cmt. The Court should grant the client's request if the Court finds that the client understands the right to have the standard fee limitations apply, and "understands and approves the terms of the proposed contract." *Id.*

Here, plaintiffs' attorneys are asking for 40% of the gross recovery in excess of one million dollars, with that amount increasing to 45% upon the preparation of "pre-

trial documents" (which is not defined).[2] This is a substantial increase from the standard fee limit. While the Comment focuses the Court's review on the client's understanding of the higher fee contract, this presupposes that the petition was filed "before suit or simultaneously with the filing of a complaint," in accordance with the plain language of the Rule. Indeed, the Florida Practice Series recommends filing the petition before the lawsuit to avoid wasting time filing a complaint along with a motion to subsequently withdraw if the petition is denied. 6 FLPRAC § 27:10. Additionally, the provision relating to the petition for division of fees uses the exact same language regarding the time to file but also adds "or within 10 days of execution of a contract for division of fees," contemplating that such a petition may be filed later in the litigation. Fla. R. Prof'l Cond. 4–1.5(f)(4)(D)(iii). That language is absent from the provision governing waivers of the fee limit.

There is little case law on this topic (perhaps because the petitions are being filed under seal), but in one case plaintiff's counsel filed a 4–1.5(f) petition after the complaint, seeking 40% of the total recovery. *Murray v. Ford Motor Co.*, No. 5:08–

cv–86/RS/EMT, 2008 WL 4876852, at *1 (N.D.Fla. Nov. 3, 2008). The court, ruling after the parties had settled, did not treat the petition as one seeking "prior court approval" under the exception and granted plaintiff's petition to the extent the settlement was less than $1 million, but for any amount over $1 million counsel had to rebut the presumption that fees over 30% would be excessive.[3] *Id.*

There may be situations where strict adherence to the language of the Rule is not required, but the time limit is at least generally indicative of when the waiver petition should be filed. The fee waiver is ill-fitted for a situation such as here in which counsel is asking the client to significantly (and unfavorably) modify their fee agreement after operating under a standard Florida contract for almost one and a half years.[4] Contracts entered into (or modified) during an existing representation may make a client feel pressured to accept the terms to avoid displeasing their lawyer, particularly when the fiduciary nature of the attorney-client relationship is considered. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. e (2000); ABA Comm. On Ethics and Prof'l

---

**2.** The contract also states that a separate fee will be determined if an appeal is taken or post-judgment litigation is required. Rule 4–1.5(f)(1) requires that the percentage for an appeal be written into the contract, and under 4–1.5(f)(4)(B)(i)(d) that amount may not be more than 5%. At the ex parte hearing Denney and Barrett agreed to abide by the 5% limitation if they represent plaintiffs for any appellate work.

**3.** A 40% fee is the regular maximum fee allowed for a recovery of up to $1 million after an answer has been filed. The *Murray* opinion does not disclose whether counsel attempted to overcome the presumption of excessiveness.

**4.** This also distinguishes the present case from a prior case in this District that Denney and Barrett were involved with, *Miller v. Ford*

*Motor Company*, No. 2:01–cv–00545. In that case, the Magistrate Judge granted the 4–1.5(f) petition for plaintiff's counsel (including Denney and Barrett) to receive 40% on any recovery. (Doc. 4 of 2:01–cv–00545). From the record it appears that Denney and Barrett were involved with that case from its inception because Denney's name appears on the complaint as one of plaintiff's attorneys. (Doc. 1 of 2:01–cv–00545). That fee contract was also signed before the complaint was filed. (Docs. 1, 4 of 2:01–cv–00545). Additionally, the contract sought a 40% fee (not 45%, as the present contract does) for a case involving both an SUV instability claim and a tire tread separation claim relating to existing multi-state proceedings. (Doc. 4 of 2:01–cv–00545).

Responsibility, Formal Op. 11–458, (2011). Based on some of the client's statements at the ex parte hearing this is a concern in this case, and it informs the consideration of whether the client actually "approves" the terms of the amended contract. Mr. Wright stated at the hearing that he agreed to the modification because "we're so far into this that ... I don't see any turning back now or letting the thing drop ... due to basically [the] contract." This does not bespeak agreement so much as reluctant acquiescence.

Contract modifications may sometimes be necessary in light of unforeseen circumstances,[5] but here there was no unexpected event that changed the nature of the litigation. The present case is certainly time-consuming and involved, but plaintiffs' original counsel knew or should have known what this case would require at its inception when he contracted for the original fee with his clients. The only unforseen event was original counsel seeking outside assistance one year into the case and then asking his clients to potentially pay substantially more in fees than what they originally agreed to. Moreover, this is not a case where a client was unable to retain an attorney and sought this waiver at the beginning of their case to obtain competent counsel.

If counsel had sought client and court approval for a fee waiver either before or at the time of the initiation of the suit, the Court might have considered whether some adjustment was appropriate. However, based on the timing of the Petition alone and the plain language of the Rule, the Court will deny the Petition to the extent it seeks to authorize contingency fees higher than the limits in 4–1.5(f). The Court's denial is also appropriate based on factors such as the lack of true voluntariness of the client's approval, and that the clients hired original counsel on the basis of a standard Florida contract.[6] These factors also show that counsel has not rebutted the presumption that the requested fees are excessive.[7]

### III. Conclusion

Plaintiffs' attorneys have established a co-counsel relationship under Rule 4–1.5(f)(4)(D)(iii). Therefore, their Petition is granted to the extent that it seeks to divide fees in excess of the 25% limitation. Plaintiffs' attorneys are not, however, entitled to receive a contingent fee beyond that allowed under Rule 1–5.(f)(4)(B)(i). Thus their Petition is denied to the extent that it seeks to charge fees in excess of the Rule limitation. Pursuant to 4–1.5(f)(4)(B)(ii), a copy of the Petition and Order denying the Petition must be served on The Florida Bar in Tallahassee by the member of the bar who filed the Petition. Plaintiffs' counsel should also provide a copy of this Order to both of their clients. Absent objection by November 1, 2013, the

---

5. As an example, the Restatement states that a contract modification is appropriate when a defendant "unexpectedly impleads a third party, and the proceedings threaten to require much more of [the] [l]awyer's time than the parties originally expected. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. e (2000). "Postinception modification beneficial to a lawyer, although justifiable in some instances, raises questions why the original contract was not itself sufficiently fair and reasonable." *Id.*

6. The present analysis incorporates the factors of 4–1.5(b) to the extent they need to be taken into consideration. Rule 4–1.5(b) lists eight factors as guides in determining whether a fee is reasonable. The Comment to the Rule states that these factors apply to all types of legal fees, and they have informed the outcome here.

7. This is particularly so in light of the fact that the parties have now settled, stopping the time and money counsel will spend on the case. (Doc. 66).

Court intends to unseal this Order and file it in the public case docket.

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Petition for Division of Attorney's Fees (Doc. S–3) is **GRANTED** in part and **DENIED** in part as stated herein.