FORST, J.
In this breach of contract case, the trial court granted summary judgment against Florida Power & Light Company (FP & L) regarding its liability and, after initially entering a judgment awarding the plaintiffs $20,463,910 in damages, the court vacated that portion of its order with respect to damages and granted a new trial as to damages only. FP & L now appeals the court’s order. Road Rock, Inc. and Pamela Hayes, as personal representative of the estate of Robert Elmore (plaintiffs), cross-appeal the same order to the extent that it dictates a new trial with respect to damages. We have jurisdiction. See Fla. R.App. P. 9.130(a)(4); Franklin Life Ins. Co. v. Davy, 753 So.2d 581 (Fla. 1st DCA 1999) (finding that appellant, who moved for new trial on liability and damages, was aggrieved by the order which limited the new trial to damages, and thus the court had jurisdiction under Rule 9.130(a)(4)). For reasons discussed below, we find that *410 the trial court erred in granting summary judgment on the issue of liability and we further find that the trial court did not abuse its discretion in granting a new trial on damages.
History of the Contracts Related to the Lake
Long before they were adversaries, FP & L and Elmore entered into two contracts reciting their rights to land initially owned by Elmore adjacent to FP & L’s plant in Broward County. FP & L wished to create a lake on the land to use in cooling water being transferred from the plant. Elmore owned a rock quarry business and wanted to excavate rock from the lake to use in construction. The parties agreed to create a 150-acre lake (as well as a smaller lake), in order to each achieve their goals. The first contract, entered into in 1955, provided the following in relevant part:
3.... In the dredging of the lake, strips 50 feet wide are to be left undisturbed and intact to enable Elmore to carry on his rock-quarrying operations throughout the lake area ... All of such strips shall be removed by Elmore, to the full depth of the lake, at his own cost and expense upon completion of his quarrying operation.
4. Title to all rock within the area of said lake ... shall be reserved by El-more under the provisions of the instrument of conveyance....
In a 1984 contract, after the lake had been created, Elmore conveyed the property to FP & L but continued to hold title to the “rock, stabilizer and sand lying within the lake presently established on the Property, and will continue to have the right to remove said rock, stabilizer and sand” (emphasis added) as provided in the 1955 contract and supplemented by a 1958 contract.
Breach of Contract Litigation
In 2004, Elmore filed paperwork with the Broward County Department of Planning and Environmental Protection (“BCDPEP”) for the purpose of obtaining the necessary permits to dredge the lake. In March 2004, BCDPEP issued Elmore a renewal permit. Subsequently, FP & L filed formal objections with the BCDPEP and succeeded in having that entity rescind the permit that had been issued to plaintiffs. Elmore then sued FP & L for breach of contract (for challenging the 2004 permit), conversion,[1] and unjust enrichment, and requested monetary damages. FP & L responded to the complaint and raised numerous affirmative defenses. The parties filed cross-motions for summary judgment on liability, each relying on the language in the contracts. Elmore’s motion did not address the affirmative defenses. The trial court denied FP & L’s motion for summary judgment, but granted Elmore’s motion. The court found that after the parties entered into the first contract, Elmore removed material from the lake, including rock, sand and stabilizer from several strips which he completely removed from the lake. The court also wrote the following:
Uncontested diagrams ... clearly show that there is no discernable difference between the four barriers already removed by Elmore (without objection by FPL) and remaining two (the subjects of this action). The barriers are long peninsulas which protrude into the lake. If one were standing on one of these barriers, he would be surrounded by water, *411 except for the narrow strip of the barrier, similar to a jetty. The individual would surely be within the lake even though his feet would be dry.
After a bench trial with respect to the issue of damages, the court awarded the plaintiffs more than $20 million as damages. FP & L moved for rehearing on liability and damages, and the court denied rehearing on liability but granted rehearing on damages, based on numerous grounds. The court did not address all of FP & L’s affirmative defenses in rendering its decision.
FP & L appeals the trial court’s ruling on liability. Plaintiffs filed a cross-appeal, seeking reinstatement of the trial court’s initial award of damages. On appeal, FP & L argues that the court erred in limiting the new trial to damages, maintaining the finding of liability was based on a summary judgment which should not have been entered. According to FP & L, summary judgment in the plaintiffs’ favor was improper for the following reasons: 1) the contract language was either unambiguous and supported FP & L’s position, or it was ambiguous and required extrinsic evidence to determine its meaning; 2) issues of fact remain concerning (a) Elmore’s fulfillment of a condition precedent and (b) when the breach occurred and started the statute of limitations running; and 3) the plaintiffs failed to sufficiently address FP & L’s affirmative defenses.
Standard of Review
The standard of review of a summary judgment is de novo. Lopes v. Sappington, 958 So.2d 483, 485 (Fla. 4th DCA 2007). A trial court’s ruling on a motion for rehearing is reviewed for abuse of discretion, but where the motion is directed to a summary judgment, “the discretion not to grant is narrowed and every disposition should be indulged in favor of granting the motion.” Holl v. Talcott, 191 So.2d 40, 46-47 (Fla.1966). With regard to interpretation of contract language, this court has written:
Construction of a contract is a question of law which an appellate court may consider de novo provided that the language is clear and unambiguous and free of conflicting inferences. However, where the contract is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous.
Miller v. Kase, 789 So.2d 1095, 1097-98 (Fla. 4th DCA 2001) (internal citations omitted). If contract language is ambiguous, summary judgment is generally improper. Berkowitz v. Delaire Country Club, Inc., — So.3d -, 2012 WL 5232251, 37 Fla. L. Weekly D2512 (Fla. 4th DCA Oct.24, 2012) (citation omitted). “However, if a party moving for summary judgment presents competent evidence to support its position, which the nonmoving party does not counter, then summary judgment may be granted.” Id. (citation omitted).
Analysis and Disposition
As in Ease, each side here contends the contract language is unambiguous, but they come to different conclusions with respect to its meaning. FP & L believes “lying within the lake” means material that is completely underwater, while Elmore contends it includes unsubmerged/above-water material within the boundaries of the lake. The contract language here is “susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract.... ” Kase, 789 So.2d at 1097-98 (citations omitted). This is borne out by the trial court’s statement that the barriers at issue “are long peninsulas which protrude into the lake,” followed by likening these strips “to *412 a jetty.” A peninsula is defined as “[a]n area of land almost completely surrounded by water except for an isthmus connecting it with the mainland....”[2] A jetty is a structure extended into a sea, lake, or river to influence the current or tide or to protect a harbor;[3] “a pier or structure of stones, piles, or the like, projecting into the sea or other body of water to protect a harbor, deflect the current,” or a wharf or landing pier.[4]
Summary judgment should be denied if “different inferences can be reasonably drawn from the uncontroverted facts.” Inphynet Contracting Servs. v. Soria, 77 So.3d 776, 780 (Fla. 4th DCA 2011). As neither side presented undisputed evidence supporting its interpretation of the language, summary judgment based on the language was improper.
Because we reverse for trial on liability, the issue of whether the court erred in entering summary judgment without addressing all of the affirmative defenses is moot. As for the other arguments that were raised by FP & L on appeal and not addressed herein, including the statute of limitations argument, we find they either do not have merit or were not preserved.
In their cross-appeal, the plaintiffs argue that for numerous reasons, the trial court erred in granting new trial on damages. The standard of review is abuse of discretion. Brown v. Estate of Stuckey, 749 So.2d 490, 497-98 (Fla.1999). “Moreover, a stronger showing has usually been required to reverse an order allowing a new trial than to reverse an order denying a motion for new trial.” Thigpen v. United Parcel Servs., 990 So.2d 639, 645 (Fla. 4th DCA 2008) (citation omitted). Upon review, we find that the plaintiffs did not establish that the court abused its discretion in granting a new trial on damages.
For the reasons set forth above, we affirm the grant of new trial on damages, and reverse the denial of trial on liability.

Affirmed in part, Reversed in part, and Remanded for further proceedings.

LEVINE and KLINGENSMITH, JJ., concur.

. The conversion count was dismissed by the trial court in 2007 and is not a subject of the instant appeal.

. Peninsula Definition, Dictionary.com, http:// dictionary-reference. com/browse/Peninsula?&path=/ (last visited July 18, 2013).

. Jetty Definition, Merriam-Webster Online http://www.merriam-webster._com/dictio-nary/jetty (last visited July 18, 2013).

.Jetty Definition, Dictionary.com, http:// dictionary.reference.com/_browse/Jetty?s=t&path=/ (last visited July 18, 2013).